UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

In re:  Coates and Kristin Coates             Case No. 19-29067

Terrance Faust et al

                  **Plaintiffs,**
   v.
                                                       Adversary No. 19-02210

**Brody Coates**

                  **Defendant.**

**REPLY BRIEF IN SUPPORT OF ADVERSARY COMPLAINT PLAINTIFFS'
MOTION FOR SUMMARY JUDGMENT**

## I.    Introduction.

There are no material factual disputes over whether Coates made improper distributions to himself in violation of Wis. Stat. §183.0607: The $10,696 that Coates paid to himself in December of 2018 was a distribution rather than a wage when no reasonable fact finder can conclude he would pay a wage to himself either for weeks for which he already received a wage payment, or for weeks during which he no longer worked for the LLC. Similarly, the Califnornia Commercial Loan and Santander Bank Loan repayments the LLC made for Coates in September and October of 2018 were distributions both because Coates' claim that these were business loans that he invested into the LLC is a sham contradicted by his testimony under oath, and because the Loan payments constituted distributions even if the loan proceeds were used to operate the LLC. Coates' taking of distributions from the LLC in September, October, and December of 2018 violated Wis. Stat. §183.0607(2)(b) when even under his own accounting the LLC's liabilities

1

exceeded the fair market value of its assets; and when those "assets" included almost $750,000 of cash that did not exist, as well as accounts receivables that Coates knew was likely uncollectable.

Nor are there any material facts over whether Coates knew he was not entitled to take distributions from the LLC in September, October, and December of 2018. Coates began to take wages rather than only distributions from the LLC only when he realized the LLC was having trouble getting paid by its customers, thus illustrating his correct understanding that he is only entitled to bona fide wage payments but not distributions from a financially troubled LLC. Coates would not have repeatedly lied under oath by mischaracterizing the distributions as wage payments or business expenses, if he did not understand the distributions were improper. Nor has Coates provided the Court with any explanation for why he believed he was entitled to accept distributions from the LLC when the fair market value of its assets was exceeded by its liabilities.

But for Coates' theft in taking improper distributions from the LLC, Plaintiffs would have been able to perfect a first priority wage lien to collect the full amount of wages owing to them. Plaintiffs are therefore entitled to judgment declaring the full amount of the stolen wages plus treble damages as a non-dischargeable debt of Brody Coates.

## II.     Argument.

1. <u>There are No Material Factual Disputes Over Whether the $10,696 Payment in December of 2018 was a Distribution</u>.

No reasonable fact finder would believe Coates' claim that the $10,696 he received in December of 2018 was a wage payment. The most detailed explanation for the payment offered by Coates, which he did not disavow in his affidavit opposing the Plaintiffs' motion for summary judgment, was that the payment was for weekly salaries of $914.60 for the weeks ending October 3, 2018 to December 5, 2018 plus some expense reimbursements. (Ho Dec. Ex. 12, pg. 1-2) There are two problems with this explanation for the $10,696 payment: First, the LLC's bank records

2

show, and Coates does not dispute, that he cashed four wage checks of $914.60 each in early October of 2018. (Ho Dec. Ex. 11, pg. 6) The $10,696 payment cannot be explained as a second wage payment for workweeks during which Coates was already paid. Second, Coates testified at the Rule 2004 Examination that the LLC had shut down by the end of October of 2018, so that by November of 2018 Coates he was consulting with a different company to transition the LLC's work to that company. (Rule 2004 Exam, pg. 82-83) No reasonable fact finder could conclude Coates would pay a salary to himself from the LLC during time periods when he was working for someone else rather than the LLC.

An affidavit that contradicts undisputed documentary evidence without explanation cannot be relied upon to manufacture a material factual dispute. *Melton v. Tippecanoe County*, 838 F. 3d 814, 819 (7th Cir. 2016) (No material factual dispute created when Plaintiffs claims were contradicted by his own timecards, and he offered the District Court no explanations for the discrepancies); *Seshardri v. Kasraian*, 130 F. 3d 798, 804 (7th Cir. 1998) (No reasonable fact finder can credit claim professor was sole author when he listed his graduate student as the lead author on the publication). Here, Coates has failed to provide any explanation for why be believed he was entitled to pay a wage to himself for October though he had already received a wage payment for those weeks; or for November and early December though he was working for someone else rather than the LLC by then. No reasonable fact finder would ignore the undisputed bank records and Coates' own admissions in favor of his unsupported claim that the $10,696 was a wage payment.

  2. <u>No Material Factual Disputes Exist on Whether Loan Repayments Made by Coates Were Distributions</u>.

As explained by the Plaintiffs' initial summary judgment motion, the loan repayments that Coates caused by the LLC to make for California Commercial loan and Santander Bank in September and October of 2018, when combined with the $10,696 distribution Coates paid to

3

himself in December of 2018 exceeded the full amount of wages that the LLC still owes to the adversary action Plaintiffs. This reply brief will therefore focus on whether there are any material factual disputes over whether the September and October, 2018 California Commercial Loan and Santander Bank repayments were distributions.

During the Rule 2004 Examination, Coates testified under oath that the only unpaid business loans for the LLC by October of 2018 were with U.S. Bank and On Deck Capitol. (Rule 2004 Exam, pg. 45) He also listed as a business loans instances when he either received a home equity loan from brewery Credit Union or a loan from his parents, and then put the proceeds of the loans into the business. (Id. pg. 45, 60) Despite Coates' understanding that personal loans that he invested into the LLC were "business loans", when asked whether he was aware of any other business loans, Coates ' answer was: "not that I can think of." (Id.) Coates further testified at the Rule 2004 Examination that he did not know what California Commercial Loan was; and that he wasn't sure what the Santander Bank entry was either. (Rule 2004 Exam., pg. 12, 44)

In his affidavit, Coates claims California Commercial Loan and the Santander Bank loan were business loans because their proceeds were used for the purpose of operating the LLC. (Docket #54-1, ¶¶7-8) The problem with this explanation is that Coates had the same understanding of "business loan" during the Rule 2004 examination, as shown by his identification of the Brewery Credit Union loan and the loan from his parents as business loans, yet failed to identify either California Commercial Loan or the Santander Bank loan as a business loan. Coates has provided the Court with no explanation for why he was unto able to recall in late 2019, but miraculously is able to recall in late 2020 that the two loans were business loans.

The sham affidavit rule is designed for this exact situation, in which to manufacture a material factual dispute a party without explanation makes a factual claim that it was earlier asked

4

about, but failed to make while under oath. *United States v. $353,443 in United States Currency*, 701 Fed Appx. 493, 497 (7th Cir. 2017) (Unpublished) (Where seized currency was not reported on individual tax returns as legitimate income, the court properly disregarded as a sham an affidavit that claimed the currency was the proceeds of legitimate business activities); *Buckner v. Sam's Club Inc*., 75 F. 3d 290, 293 (7th Cir. 1996) (Under sham affidavit rule party opposing summary judgment is not permitted to deny knowing what she stepped on during her deposition, and then claim in an affidavit that she stepped on a small object that appeared to be a small ladies' watch). The Court should similarly disregard as a sham Coates ' claim that the proceeds of the California Commercial Loan and Santander Loan were contributed to the LLC, when he earlier testified under oath that he could not either recall them as business loans, or indeed what they were.

Moreover, the LLC's loan repayments for California Commercial Loan and Santander Bank Loan were distributions even if Coates did use the proceeds of both loans to operate the LLC. Wis. Stat. §183.0102(4) defines a distribution as a transfer by the LLC to or for the benefit of its members in respect to their interests. When a loan is a personal liability of a shareholder, the LLC's repayment of the loan on behalf of the shareholder clearly constitutes a transfer for the benefit of the shareholder and in the shareholder's interest. Whether a repayment to a shareholder constitutes a distribution therefore depends on whether the original payment from the shareholder to the LLC was a contribution (in which case any repayment is a distribution) or was a loan (in which case the repayment is not a distribution). *Jennings v. U.S*., 272 F. 2d 842, 843 (7th Cir. 1959). The main difference between a contribution and a loan is that a contribution assumes the risks of the venture, while a loan must be repaid whether or not the venture is successful. *Portage Plastics, Inc. v. U.S*., 301 F. Supp. 684, 689 (W.D. WI. 1969), enforced in relevant part by 470 F. 2d 308, 311-313 (7th Cir. 1972). That the LLC had no obligation to repay either the California Commercial loan or the

5

Santander Bank loan to Coates, so that both were contributions rather than loans by Coates to the LLC, is illustrated by the fact that neither loan appear on the LLC's balance sheet as a liability (Docket #54-2, pg. 3). Coates had no right to both the fruits of his investment in the LLC in the form of the LLC"s profits after using his investment as capital, and for the LLC to repay the costs of said investment. Coates' claim that he invested the proceeds of California Commercial Loan and Santander Bank loan into the business is not material because even if that claim is credited, the LLC's repayment of these loans in the place of Coates still constituted distributions.

    3.    <u>There is no Material Factual Dispute Over Whether Coates Paid Himself a Salary Before September of 2018</u>.

In his Affidavit, Coates claimed that before September of 2018 he paid himself a salary of $60,000 per year. (Docket #54-1, ¶4)[1] The voracity of this claim can be determined for July and August of 2018 by examining the checks that were cashed against the LLC's U.S. Bank Account.

U.S. Bank records show that whereas before July of 2018 the U.S. Bank account was used to make direct deposit of wages to employees, beginning in July of 2018 the U.S. Bank Account would directly pay tax withholdings while actual checks were cut to employees. The most direct evidence for this conclusion is that on June 26, 2018 the U.S. Bank account made two payments through the Fifth Cincinnati Payroll service, one for more than $40,000 while a second for under $13,000; so that the $13,000 payment were tax withholdings for the $40,000 payment. (Ho Dec. Ex. 7, pg. 4) During July and August of 2018 the same Payroll Service only made payments under $15,000 and often under $10,000 per week. (Ho Dec. Ex. 8-9) Moreover, whereas the account statement for May of 2018 show very few checks cashed in amounts between $1,000 and $1,500, which match after tax weekly wages for employees generally earning about $40 per hour, by July

---

[1] The same paragraph of the affidavit claims, without providing the actual tax return, that Coates reported wages of $60,000 in his 2017 tax return. Plaintiffs assume this is a typographical error, and that the declaration refers to the 2019 tax return for wages paid in 2018, so that Coates is claiming he paid himself a salary of $60,000 in 2018.

6

and August of 2018 dozens of checks between $1,000 and $1,500 were cashed against the LLC's accounts each month (Ho Dec. Ex. 6, 8-9) Coates himself cashed checks in the amount of $914.60 each against the LLC's accounts in September and October of 2018. (Ho Dec. Ex. 10, pg. 5; Ex. 11, pg. 6) If Coates did pay himself wages in July and August 2018, the payments would show up as cashed checks, rather than as part of the Fifth Cincinnati payroll tax payment.

Taking into account tax withholdings of about 25%, a weekly payment of $914.60 is about the equivalent of a $60,000 salary pro-rated into 52 weeks. Coates' claim that he paid himself a wage in July and August 2018 is negated by U.S. Bank records for those months, which do not show that either checks of $914.60 each or indeed any checks of around $900 were cashed against the account on a weekly basis. Coates cannot manufacture a factual dispute by relying on bare assertions that are contradicted by undisputed documentary evidence. *Melton*, 838 F. 3d at 819.

The record thus conclusively demonstrates that in September of 2018, when Coates realized the LLC was for the first time having trouble getting paid by its customers (Rule 2004 Exam, pg. 26), he caused the LLC to begin making wage payments to himself rather than only accepting distributions (in the form of loan repayments, credit card repayments, and retirement contributions) from the LLC. The only plausible explanation for the change is once the LLC began experiencing financial troubles, Coates understood he was only entitled to receive wage payments but not distributions from the LLC.

    4. <u>No Material Factual Dispute Exists on Whether the LLC was Solvent in September and October of 2018.</u>

Under Wis. Stat. §183.0607(1)(b), a LLC may not make distributions to its members if following the distribution the fair value of the LLC's assets would be exceeded by its liabilities. Even by Coates' own accounting, the LLC's total liabilities exceeded the book value of its assets by about $550,000 as of December 7, 2018. (Docket #54-2, pg. 1) Coates has presented the Court

7

with no evidence showing the LLC's balance sheet was more positive in September and October of 2018 compared to December of 2018. In fact, all of the September and October payments from the U.S. Bank account for California Commercial Loan and Santander Bank loan occurred by no later than October 11, 2018. (Ho Dec. Ex. 11, pg. 4-5) The LLC invoiced more than half a million dollars of accounts receivables between October 13, 2018 and November 15, 2018. (Ho Supp. Dec. Ex. 1) If these accounts receivables are considered legitimate assets of the LLC, then the LLC's balance sheet on or before October 11, 2018 without these additional accounts receivables would be even more in the red compared to the LLC's balance sheet dated December 7, 2018.

Nor can Coates avoid a finding that the LLC's assets were exceeded by its liabilities between September and December of 2018 by claiming that LLC had an additional book of unperformed business. Future business cannot offset the LLC's current liabilities both because the LLC would have no right to payment from its prospective customers if the contracted for work is not performed; and more importantly when the LLC's actual costs of performing the future work is unknown, so there is no guarantee accounts receivables (i.e. assets) generated by future work would exceed the LLC's new liabilities acquired through incurring costs for performing the work.

Moreover, there are significant problems with Coates ' claim that the LLC's assets had a fair market value of more than $1.6 million on December 7, 2018. First, that valuation included almost $750,000 in undeposited funds. (Docket #54-2, pg. 2) However, by October of 2018 the LLC was so cash strapped that Coates had to borrow $100,000 from his parents and contribute the money to the LLC's account to make sure the LLC could cover its wage and benefit payments while he went on vacation. (Rule 2004 Exam., pg. 60) Coates would have no need to obtain the loan from his parents to cover payroll, and would also have no reason to either fail or delay paying wages as detailed in employee declarations that the Plaintiffs have submitted to the Court, if it had

8

almost three quarters of a million dollars in undeposited funds in October of 2018. Because the LLC was not paid by a single customer during October and November of 2018, there is no basis to find the LLC acquired any of the undeposited funds after October of 2018 either. (Ho Supp. Dec. Ex. 1)

Equally dubiously, almost $1.5 million of the claimed assets consisted of accounts receivables of the LLC. An asset entry on a balance sheet may not necessarily be an asset for the purpose of determining insolvency despite the entry's appropriateness in accounting terms. *In re Royal Gardens, Inc.*, 32 B.R. 296, 299 (Bankr. D. Mass. 1983). The value of accounts receivables therefore must be discounted for uncollectable and disputed debts. *See Id.* By September of 2018 Coates knew that (a) several former employees had spread rumors about him to general contractors; (b) general contractors no longer trusted him as shown by their beginning to contact him about entering into joint check agreements to make sure his laborers and suppliers were paid; (c) General Contractors timely paid the LLC before September of 2018; and (d) something changed because starting in September of 2018 general contractors were no longer paying him. (Rule 2004 Exam., pg. 23-26) Coates thus knew by September of 2018 that the LLC was having trouble getting paid by general contractors, so the full value of the account receivables were no longer their fair value. The LLC indeed did not receive a single payment from a customer after September 12, 2018. (Ho Supp. Dec. Ex. 1) Certainly by December of 2018 Coates no longer believed he could fix the LLC's problems that caused it to have trouble getting paid by its customers, so that when Coates paid the $10,696 distribution to himself he had to have known the accounts receivables were not worth their full invoiced values. (Docket #54-1, ¶16)

Because the undisputed evidence demonstrate the LLC's liabilities exceeded the fair value of its assets in September, October, and December of 2018, Coates violated Wis. Stat.

9

§183.0607(2)(b) by causing the LLC to make distributions to him in the form of repayments of the California Commercial Loan and Santander Bank Loan in September and October of 2018, and by having the LLC make a cash distribution of $10,696 to himself in December of 2018.

Nor is there any material dispute that the Plaintiffs were harmed by Coates' taking of improper distributions from the LLC. Merely telling the Court there is a factual dispute over whether Coates ' theft from the LLC harmed the Plaintiffs does not create one. As the Plaintiffs explained, if Coates did not take the improper distributions the monies would have remained in the LLC's account, so that the Plaintiffs would be able to collect the full amount of remaining wages owed to them by perfecting and enforcing a first priority Wis. Stat. §109.09(2) wage lien against the LLC's bank accounts. Coates has not disputed either that the monies would have remained in the LLC's accounts but for his taking the improper distributions, nor with the Plaintiffs' interpretations of Wis. Stat. §109.09(2). No factual disputes remain on whether Plaintiffs were harmed by Coates' taking of improper distributions from the LLC.

    5.    <u>Plaintiffs Have Demonstrated Embezzlement by Coates by a Preponderance of the Evidence</u>.

Contrary to Coates' argument, embezzlement does not require a finding that property was entrusted to the debtor. Embezzlement may also be committed by one into whose hands property has lawfully come. *In re Weber*, 892 F. 2d 534, 538 (7th Cir. 1992). This requirement is easily met when Coates possessed the LLC's monies by virtue of being its 100% owner. Coates then used the LLC's monies for a purpose other than for which it was intended by making distributions to himself that violated Wis. Stat. §183.0607(2)(b).

The remaining question is whether in causing and accepting the improper distributions, which deprived the Plaintiffs of their opportunity to collect wages owed to them by perfecting first priority Wis. Stat. §109.09(2) wage liens, Coates acted with the required fraudulent intent. He has

not disputed that fraudulent intent, which simply means the debtor's knowledge that he had no right to use the property that he embezzled, may be inferred from the totality of circumstances and need not be unequivocal. *In re Krook*, 615 B.R. 479, 485-486 (Bankr. N.D. IL. 2020); *Matter of Rose*, 934 F. 2d 901, 904 (7th Cir. 1991). The dispositive question on fraudulent intent is whether Coates understood he was not entitled to receive distributions from the LLC given its financial difficulties experienced in September, October, and December of 2018. As held by *In re Bell*, 498 B.R. 463, 483 (Bankr. E.D. Pa. 2013), a case that Coates never distinguished or limited, fraudulent intent can be inferred from a combination of a pattern of concealment and nondisclosure; and from the lack of any legitimate explanation for the debtor's conduct.

*Bell* is consistent with bankruptcy and non-bankruptcy cases holding that when there is some indicia of fraud (including but not limited to the debtor's dishonesty) that gives rise to an inference of fraud, the defendants' failure to provide any innocent explanation for his conduct allows for a finding of fraudulent intent on summary judgment as a matter of law. *U.S. v. Denlinger*, 982 F. 2d 233, 236-237 (7th Cir. 1992) (When a strong inference that a transfer was fraudulent could be drawn from the timing of the transfer and the fact that it left the estate insolvent, the government is entitled to summary judgment when no innocent explanation was offered for the timing and effect of the transfer); *In re Williamson*, 2013 WL 441418 *3 (Bankr. S.D. GA. 2013) (Where there was circumstantial evidence of fraud including omission of the transfer from bankruptcy schedules and the debtor lying about the transfer at a Rule 341 meeting, and no evidence was offered to counter the accusation of fraudulent intent, discharge may be denied on summary judgment); *In re Rowland*, 441 B.R. 281, 288 (Bankr. S.D. OH. 2010) (Circumstantial evidence of fraud including pre-bankruptcy transfer of the only two profitable

11

stores and the omission of the profitable stores from the bankruptcy schedules, combined with failure to provide any explanation or defense are sufficient to deny the debtor his discharge).

None of the cases cited by Coates impose a higher standard upon the Plaintiffs to demonstrate fraudulent intent as a matter of law. In *In re Weber*, 892 F. 2d at 538, the adversary action plaintiff tacitly consented to the debtor's possession and control of the money by not objecting though he was aware of the possession/control; whereas the Plaintiffs in this case were not aware before the litigation began, and therefore could not have tacitly consented to Coates ' embezzlement of the LLC's assets. *In re Ribsby*, 152 B.R. at 778, was a case in which the plaintiff was unable to produce documentation showing intent to deceive, while in this case fraudulent intent can be inferred from a combination of documentary evidence showing when Coates began to pay a wage to himself and by Coates' repeated lies under oath. *In re Kressner*, 155 B.R. at 74 was a case that denied the debtor's motion for summary judgment, so that it does not establish what standard an adversary action plaintiff must meet to demonstrate fraudulent intent on summary judgment. Finally, in *re Belfry*, 862 F. 2d at 662 was a case that did not involve embezzlement at all, because the debtor was free to spent the money however he wished so long as he performed the car restoration services that were contracted for.

Applying the correct summary judgment standard, two key pieces of evidence permit an inference of fraudulent intent as a matter of law: That Coates caused the LLC to begin to pay a salary to himself only when he realized the LLC was having trouble getting paid by its contractors; and his repeated lies under oath to mischaracterize the distributions as wage payments or as payments of business expenses. If Coates believed he was entitled to take distributions from the LLC in September and October of 2018 despite its financial difficulties, he would have no reason to begin to pay himself a wage at that time. Coates also would have no reason to either lie three

12

separate times under oath (i.e. during the Rule 2004 Exam, when responding to interrogatories, and in his affidavit opposing summary judgment) by mischaracterizing the $10,696 payment as a wage payment, nor to suddenly recall without any explanation that he used the proceeds of California Commercial Loan and Santander Bank Loan, if he believed he was entitled to take distributions from the LLC. Instead, one who believes he had the right to accept distributions from the LLC would have admitted that the payments were distributions, and then explained to the Court why he believed at the time he was entitled to accept the distributions.

Coates has provided the Court with no explanation as to whether why he began to pay himself a salary in September of 2018, or why he has repeatedly lied under oath to cover up the improper distributions that he received. Just like in the cases that the Plaintiffs cited, the only plausible explanation for Coates' conduct is that he both understands and understood at the time that he was not entitled to distributions from the LLC in September, October, and December of 2018; and is lying to cover up his receipt of distributions that he understood was improper. No more than the debtor's knowledge that he had no right to use the property that he embezzled is required to demonstrate fraudulent intent. *In re Krook*, 615 B.R. at 485-486.

6. Conclusion.

Coates does not dispute that if his taking of improper distributions from the LLC constituted theft within the meaning of Wis. Stat. §943.20, under Wis. Stat. §895.446(1) and (3) Plaintiffs who have been harmed by his theft are entitled to a judgment against him equal to the amount of the harm plus treble that amount as liquidated damages. Because Plaintiffs plainly have been harmed by Coates' theft from the LLC, The Court should therefore find on summary judgment that the total amount of $91,391.68, equal to four times the wages the Plaintiffs would

have recovered from the LLC but for Coates' theft, is a non-dischargeable debt owed by Coates to the Plaintiffs.

Dated this 16th day of November, 2020.

/s/Yingtao Ho
Yingtao Ho
THE PREVIANT LAW FIRM, S.C.
Attorney for Plaintiffs
310 West Wisconsin Ave. Suite 100MW
Milwaukee, WI 53212
414-271-4500 (Telephone)
414-271-6308 (Fax)
Email: yh@previant.com